UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TORY LAMAR MEANS,

                          Plaintiff,

          -against-

ROCKLAND COUNTY CORRECTIONAL
FACILITY, et al.,

                          Defendants.

18-CV-8290 (CM)

ORDER TO AMEND

COLLEEN MCMAHON, Chief United States District Judge:

Plaintiff, currently incarcerated at the Rockland County Jail, brings this *pro se* action

under 42 U.S.C. § 1983, alleging civil and constitutional violations stemming from his

confinement and his criminal proceedings in the Rockland County Court. By order dated March

11, 2019, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in

forma pauperis*.[1] For the reasons set forth below, the Court grants Plaintiff leave to file an

amended complaint within sixty days of the date of this order.

**STANDARD OF REVIEW**

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious,

fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480

F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint when the Court lacks

subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any

of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been
granted permission to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(b)(1).

F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

Plaintiff Tory Means originally filed this action with another inmate, Kim Vasquez. On October 4, 2018, the Court directed that the case be severed into two individual cases. (ECF No. 2.)[2] Plaintiff Means (hereinafter "Plaintiff") is now the sole plaintiff in this action and the Court will only refer to portions of the complaint that relate to Plaintiff.

Plaintiff brings this action against Rockland County Correctional Facility and its medical department; several John Does, including the grievance coordinator, "supervisor of safety," and correction officers; Rockland County Bar Association and two 18B lawyers – Christina Cignak and Theresa Difalco; John Doe correction officers who conducted strip searches; Keefe Commissary Network; Rockland County; Rockland County Public Defender's Office and several of its attorneys – Stephanie Jordan, Mark Liquor, David Constanza, and Christopher Waters; Rockland County Court; Spring Valley Court; Clarkstown Court; and John Does from the Clarkstown Police. He asserts that Defendants have engaged in a litany of violations of his rights. Among other things, they have denied him access to the courts, denied his grievances, denied him medical care, denied him confidential phone calls with his attorney, subjected him to "humiliating strip searches," overcharged him for postage, and committed "religious violations." (*Id*. at 6-7.) Plaintiff seeks injunctive relief and monetary damages.

---

[2] Citations to the complaint and orders refer to the pagination generated by the Court's electronic case filing system (ECF).

The following facts are taken from Plaintiff's complaint: on the afternoon of August 27, 2018, while playing basketball at Rockland County Jail, Plaintiff collided against a brick wall and fractured his ankle and now has to use crutches to get around and complete simple daily tasks. Plaintiff describes the conditions under which inmates take recreation and play basketball as unsafe. The brick wall he ran into is "extremely dangerous" because it is situated directly behind the basketball rim, and that the concrete ground has "huge cracks" made worse by the thin sneakers without ankle support provided to inmates. (ECF No. 1 at 5-6.) Plaintiff vows "to never risk [his] safety to play basketball or get recreation to relieve stress or exercise in such unsafe conditions." (*Id*. at 6.) As a result of the incident, Plaintiff suffers from headaches and migraines, as well as the fractured ankle. He claims that correction officials and staff members of the medical department violated his rights by denying him x-rays, MRIs, and his personal sneakers.

In several pages labelled "second complaint," Plaintiff asserts that correction officials have violated his right to exercise his religion, denied him access to the courts, denied his grievances, and denied him privacy to communicate with his attorney. (*Id*. at 8.) Correction officials have also failed to provide him "law books at all, paper, typewriter, legal postage, carbon paper, law library assistance, envelopes, legal addresses, [and] free legal paper upon entre [sic]." (*Id*.) Further, the Keefe Commissary Network charges inmates 50 cents per postage stamp and the facility has a rule that an inmate cannot buy just a single stamp but must instead purchase an entire book of ten stamps, which constitutes "postal fraud" and violates "United States Statute 39 § 101(d) (postal policy). (*Id*. at 8, 14.) Correction officials have thus deprived him of his right to be protected from fraud and other scams. In addition, they have failed to provide to him and other inmates "a free letter to obtain counsel or inform a relative or friend" upon the inmates'

entry to the facility, and have impinged on the confidentiality of legal phone calls by requiring inmates to make such calls in the presence of the chaplain or a social worker (*Id*. at 8, 14.)

Plaintiff further states that "[t]he religion, creed, culture procedures in [the] Rockland County Jail is bias, discriminative, and favors Judaism." (*Id*. at 12.) Correction officials treat inmates who practice Islam or are of "Indian blood" differently by refusing to permit these inmates to observe religious practices or holidays. Correction officials denied Plaintiff the opportunity to observe the Islamic holiday Eid in August 2018, and denied him and others the opportunity to observe other unspecified Islamic holidays. Correction officials also ignored Plaintiff's grievances concerning his First Amendment claims and other issues. (*Id*.)

In addition, Plaintiff has been subjected to humiliating and degrading strip searches without probable cause. Such searches are a "constant wastes [sic] of latex" and violate the Fourth Amendment. (*Id*.) Plaintiff was even subjected to a strip search when he visited his mother while he was on crutches.

Finally, Plaintiff asserts multiple claims arising from his criminal proceedings in the Rockland County Court, including the following: that the state court has denied his requests for the charges to be reduced or dropped based on violation of his right to a speedy trial and his unconstitutional conditions of confinement; he has been deprived of his rights under both the Fifth and Sixth Amendments because he is "being charged upon total hearsay allegations" and he does not have effective assistance of counsel (*id*. at 8); he was denied a preliminary hearing on the charges; the "Rockland County Appointed Counsel Network" has refused to assist him; and he was provided "horrible counsel" (*id*. at 10). Plaintiff contends that Rockland County has structured its legislative system so that he does not have access to the courts, which hampers his

ability to control property and "redeem and prevent ongoing commercial theft and commercial real property theft, and money laundering, slavery, etc." (*Id*. at 15.)

Plaintiff requests relief from the alleged violations, immediate appointment of *pro bono* counsel, and unspecified estates and real property. He also wants "to be provided [his] religious & culture rights, and to not be degraded and humiliated by strip searches by men, and to be released from [the] hearsay allegations." (*Id*. at 20.)

## DISCUSSION

### A. Immune or Improper Defendants

Plaintiff brings this action under 42 U.S.C. § 1983, asserting that Defendants violated his federal constitutional rights at the Rockland County Correctional Facility and in his criminal proceedings in the Rockland County Court. Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### 1. Entities Lacking Capacity to be Sued

Plaintiff's claims against the Rockland County Correctional Facility and the Rockland County Jail Medical Department must be dismissed because under New York law city agencies or departments do not have the capacity to be sued. *See* N.Y. Gen. Mun. Law § 2 ("The term 'municipal corporation,' as used in this chapter, includes only a county, town, city and village."); *see also Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities."); *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are

merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued.").

2.     Eleventh Amendment

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* Rockland County Court, Spring Valley Court, and Clarkstown Court are parts of the New York State Unified Court System, which "is unquestionably an 'arm of the State.'" *Id.* New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66-71 (1989) (holding that neither a state nor its officials acting in their official capacities are "persons" under § 1983). Plaintiff's § 1983 claims against the three courts are therefore dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

3.     Private Actors

Further, a claim for relief under § 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are therefore not generally liable under the statute. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). A private party, however, can qualify as a state actor under § 1983 if the link between the state action and the private party's action is so close that the private party's action "may be fairly treated as that of the State itself." *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 229 (2d Cir. 2004) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345,

351 (1974)); *see also Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 112 (2d Cir. 2003) (A "private actor [who] operates as a willful participant in joint activity with the State or its agents" may be considered a state actor under § 1983) (citation omitted); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("[A] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.").

Plaintiff brings claims against Rockland County Bar Association, Christina Cignak, Theresa Difalco, Rockland County Defender's Office, Stephanie Jordan, Mark Liquor, David Constanza, and Christopher Waters, asserting that he has been appointed "horrible counsel" and because of these defendants' lack of assistance he is unable to get effective assistance of counsel for his criminal case in the Rockland County Court. (ECF No. 1 at 10.) But Plaintiff does not allege any facts suggesting that these defendants engaged in any concerted action with a state representative that would make the defendants liable under § 1983. *See Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). The representation (or lack thereof) of a defendant by private counsel in state criminal proceedings does not constitute the degree of state involvement or interference necessary to establish a claim under § 1983, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender. *See Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 324-25 (1981)); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (holding that legal aid organization ordinarily is not a state actor for purposes of § 1983). As Defendants Rockland County Bar Association, Christina Cignak, Theresa Difalco, Rockland County Defender's Office, Stephanie Jordan, Mark Liquor, David Constanza, and Christopher Waters are private parties who do not work for any state or other government body, Plaintiff's § 1983 claims against these defendants must be dismissed.

Similarly, Plaintiff's claims against Keefe Commissary Network – a private contractor – must also be dismissed. Plaintiff brings his claim against this defendant for allegedly overcharging for stamps, which he states implicates his right of access to the courts. But Keefe Commissary Network is not transformed into a state actor merely by virtue of any contract to provide stamps or other commissary it may have with Rockland County or the Rockland County Correctional Facility. *See Whitehead v. Marcantel*, 2017 WL 432648, at *5 (D.N.M. Sept. 27, 2017) (finding Keefe Commissary Network a private actor and listing cases); *see also Anderson v. Sposata*, No. 11-CV-5663, 2013 WL 2023229, at **3-4 (E.D.N.Y. May 9, 2013) (finding that Global Link, contractor of telephone services, is not a state actor by virtue of a public contract; citing cases). *But see Torres v. Aramark Food Commissary Servs.*, No. 14-CV-7498 (KMK), 2015 WL 9077472, at *6 (S.D.N.Y. Dec. 16, 2015) ("Because providing food to inmates is a public function . . . Aramark, acting as the state's culinary surrogate," is a state actor); *Pagan v. Westchester Cnty.*, No. 12-CV-7669 (PAE) (JCF), 2014 WL 982876, at **23-25 (S.D.N.Y. Mar. 12, 2014) (same).

Further, even if the Court were to consider Keefe Commissary Network a state actor in its role as a commissary provider, the complaint is devoid of factual allegations suggesting a constitutional violation. *See Montalvo v. Lamy*, 139 F. Supp. 3d 597, 605 (W.D.N.Y. 2015). As discussed below, Keefe Commissary Network's overcharging for postage stamps does not state an access-to-courts claim.

4.    Personal Involvement

The Court also dismisses from this action the John Doe police officers from the Clarkstown Police Department. The claims against these defendants arise from an incident involving Kim Vasquez on February 9, 2018. (*See* ECF No. 1 at 16.) Kim Vasquez's claims were severed from this action (ECF No. 2), and Plaintiff does not allege any facts showing how any

individual from the Clarkstown Police Department was personally involved in the events underlying his claims. The Clarkstown Police John Does are therefore dismissed because Plaintiff fails to state a claim against them. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.**     **Section 1983 Claims**

The Court now considers Plaintiff's claims against the remaining defendants – Rockland County and John Does at the Rockland County Correctional Facility, including the grievance coordinator, "supervisor of safety," and correction officers. Plaintiff asserts that these defendants acted with at least deliberate indifference to the conditions of his confinement; subjected him to unlawful strip searches; deprived him of his First Amendment rights; and denied him confidential access to his counsel.

1.     Conditions-of-Confinement Claims

Plaintiff contends that Defendants created unsafe conditions in the recreation area at Rockland County Correctional Facility that caused him to crash into a wall while playing basketball and then failed to provide him adequate medical treatment. Whether Plaintiff was a pretrial detainee or convicted prisoner, he must satisfy two elements to state such claims: (1) an "objective" element, which requires a showing that the challenged conditions are sufficiently serious, and (2) a "mental" element, which requires a showing that the officer acted with at least deliberate indifference to the challenged conditions. *Darnell*, 849 F.3d at 29.

The objective element of a deliberate indifference claim is the same for pretrial detainees and convicted prisoners – "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health" or safety, which "includes the risk of serious damage to 'physical and mental soundness.'" *Id.* at 30 (citing *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013), and quoting *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)); *see also Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's

'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). "[P]rison officials violate the Constitution when they deprive an inmate of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Walker*, 717 F.3d at 125 (internal quotation marks omitted).

The second element – the "subjective" or "mental" element – varies depending on a prisoner's status as a pretrial detainee or convicted prisoner. As a pretrial detainee, Plaintiff must allege facts showing "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. The mere negligence of a correctional official is not a basis for a claim of a federal constitutional violation under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).

i.    Unsafe Basketball Court and Inadequate Prison-Issued Footwear

Plaintiff asserts that while playing basketball with thin sneakers on an unsafe basketball court with huge cracks and a brick wall situated directly behind the basketball rim, he ran into the brick wall and fractured his ankle. But the alleged conditions Plaintiff described, "evaluated in light of contemporary standards of decency," do not rise to the level of a constitutional deprivation. *Darnell*, 849 F.3d at 30 (citations omitted). Plaintiff's complaints concerning the suboptimal basketball court and inadequate prison-issued footwear do not sufficiently plead an objectively serious condition that posed an unreasonable risk of serious damage to his health or safety.[3] *See Shamel v. Agro*, No. 11-CV-9473 (GBD) (HBP), 2013 WL 686681, at *9 (S.D.N.Y.

---

[3] The Court notes that participants in an athletic activity generally assume the risks of "those injury-causing events which are known, apparent or reasonably foreseeable consequences

Jan. 28, 2013) (listing cases from this Circuit holding that problems resulting from being forced to wear institutional footwear are not sufficiently serious); *Stevens v. City of New York*, No. 12-CV-3808 (JMF), 2013 WL 81327, at *3 (S.D.N.Y. Jan. 8, 2013) ("Indeed, courts in this Circuit have consistently found that pain and other problems resulting from being forced to wear institutional footwear are not sufficiently serious. . . ."); *Park v. City of New York*, No. 10-CV-9627 (DLC), 2011 WL 5865083, at *6 (S.D.N.Y. Nov. 22, 2011) ("Although [plaintiff] makes the conclusory argument that the condition of the basketball court posed a 'great risk' to 'his health and or safety,' he has cited to no authority that suboptimal recreational facilities rise to the level of a hazardous condition violative of inmates' constitutional rights.").

Moreover, Plaintiff does not allege any facts suggesting that any defendant had a sufficiently culpable state of mind when disregarding the basketball court conditions or when denying him the right to wear his personal sneakers. Plaintiff does not state how long the conditions lasted, whether correction officials knew or should have known about the conditions or his safety concerns, or whether any defendant failed to take reasonable measures to mitigate or correct the conditions. *See Darnell*, 849 F.3d at 35. Plaintiff's allegations concerning the basketball court and his footwear therefore fail to state a claim on which relief may be granted.

Because the Court cannot say at this stage that an amendment would be futile, the Court grants Plaintiff sixty-days' leave to submit an amended complaint. If Plaintiff submits an amended complaint, he must state facts suggesting that the basketball court and his prison-issued shoes posed an unreasonable risk of serious damage to his health or safety and that individuals

---

of the participation." *Scoma v. United States*, No. 02-CV-2970 (JG), 2004 WL 40511, at *2 (E.D.N.Y. Jan. 7, 2004); *Judge v. City of New York*, 101 A.D.3d 560, 561 (1st Dep't 2012) (where prisoner was aware of the defect in the pavement before his accident, he "assumed the risk of injury by voluntarily playing basketball on the outdoor court").

named as defendants were fully aware of the unconstitutional conditions and recklessly disregarded them. Plaintiff must specifically name as defendants the individuals responsible and state what role each defendant played in the alleged violations.

ii.    Inadequate Medical Care

Plaintiff further asserts that correction officials and staff members of the medical department were deliberately indifferent to his medical needs after he crashed into the brick wall. In particular, he asserts that he suffers headaches and migraines, along with the fractured ankle, and that he was denied adequate medical care, including x-rays and MRIs. Even if the Court assumes that Plaintiff alleges a "sufficiently serious" medical condition "that significantly affects [his] daily activities," *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998), he fails to allege that correction or medical staff disregarded his condition or recklessly failed to act with reasonable care to mitigate risks to his health or safety, *see Darnell*, 849 F.3d at 35. Other than his assertions that he was denied x-rays and MRIs, Plaintiff fails to describe the alleged inadequate medical care. But "mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703. As Plaintiff fails to allege facts suggesting that correction or medical staff were deliberately indifferent to a sufficiently serious medical condition, he fails to state a claim for unconstitutional denial of adequate medical treatment.

Because of Plaintiff's *pro se* status and the nature of his claims, the Court grants him leave to amend the complaint to state any facts suggesting that correction or other staff showed deliberately indifference to his serious medical conditions by intentionally or recklessly denying him care. Plaintiff must describe his serious medical conditions, name as defendants the individuals who denied or interfered with his medical needs, and allege what each defendant did to violate his rights.

2. Unlawful Strip Searches

Plaintiff makes multiple references to humiliating and degrading strip searches and asserts that those searches were unreasonable, and violated the Fourth Amendment. When determining whether a search is constitutional, courts balance "the need for a particular search . . . against the resulting invasion of personal rights." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 327 (2012). Correction officials can conduct "random searches" of inmates, including pretrial detainees, without having "reason to suspect a particular individual of concealing a prohibited item." *Id*. But, to comply with the Fourth Amendment, searches must be "reasonably related to legitimate penological interests." *Turkmen v. Hasty*, 789 F.3d 218, 260 (2d Cir. 2015) (discussing how daily strip-searches conducted "when there was no possibility that [detainees] could have obtained contraband" do not relate to a legitimate penological interest). Searches that involve intentional humiliation, abuse, or invasive touching may also violate the Fourth Amendment. *Florence*, 566 U.S. at 339.

Except for stating that he was subjected to a strip search when he visited his mother while he was on crutches, Plaintiff does not describe how and why these searches occurred; he merely indicates that they occurred and concludes that they were unconstitutional. The Court therefore grants Plaintiff leave to assert a Fourth Amendment claim by providing more facts about the allegedly humiliating and degrading strip searches.

3. First Amendment Claims

Plaintiff asserts that correction officials deprived him of his First Amendment rights by hindering his access to the courts, discriminating against him and others based on their religion, and summarily denying his grievances.

i.    Access-to-Courts Claim

Prisoners have "a constitutional right of access to the courts [that] gives rise to a number of derivative rights, including the right to access legal materials to prepare a case, and the right of indigent inmates to be provided with paper and pens to draft legal documents and stamps to mail them," *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (citing *Bounds v. Smith*, 420 U.S. 817, 824-28 (1977)), and "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law," *Bourdon v. Loughren,* 386 F.3d 88, 92–93 (2d Cir. 2004) (quoting *Bounds,* 420 at 821, 828). But assistance from prison authorities is "only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey,* 518 U.S. 343, 351 (1996) (internal quotation marks omitted). Access to the courts does not require prison authorities to furnish inmates with unlimited access to any and all resources that might support a prisoner in presenting his legal claim. *Id.* at 355. A claim that an individual's right of access to the courts has been denied may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss or inadequate settlement of a meritorious suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002).

To state a claim for denial of access to the courts, a plaintiff must allege facts showing that the defendant's conduct: (1) "was deliberate and malicious," and (2) "resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (internal quotation marks omitted); *see also Harbury*, 536 U.S. at 415. To demonstrate actual injury, a plaintiff must allege: (1) a valid underlying

cause of action separate from the right-of-access claim; and (2) frustration or hindrance of the litigation caused by the defendant's actions. *See Harbury*, 546 U.S. at 415.

Plaintiff asserts that correction officials denied him access to the courts by failing to provide him "law books at all, paper, typewriter, legal postage, carbon paper, law library assistance, envelopes, legal addresses, free legal paper upon entre [sic]," and free telephone calls. (ECF No. 1 at 8.) He also claims that Keefe Commissary Network overcharges for stamps, which further hinders his ability to access the courts. But Plaintiff's assertions do not suggest that anyone infringed on his right of access to the courts. He makes only vague references to his difficulties pursuing unspecified legal matters; he fails to provide a single example of a meritorious legal claim that he was unable to pursue because of a defendant's actions. Further, the Court notes that Plaintiff had access to materials to submit to the Court this handwritten complaint and other documents in this case. As Plaintiff does not allege facts suggesting that the alleged deprivations have hindered him in any way from pursuing meritorious litigation, he therefore fails to state an access-to-courts claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

    ii.    Free Exercise Claim

The Court construes Plaintiff's assertions that correction officials are hostile to Islam and denied him and others the opportunity to observe Islamic holidays as claims arising under the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq*. "A prison inmate . . . retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) (quoting *Giano v. Senkowski,* 54 F.3d 1050, 1053 (2d Cir.1995)). Those rights include "some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause," *Ford v. McGinnis,* 352 F.3d 582. 588 (2d Cir.2003), such as the right to observe a

religious diet, *McEachin v. McGuinnis,* 357 F.3d 197, 204 (2d Cir.2004), or attend religious

services, *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir.1989).

If a prison regulation "impinges on inmates' constitutional rights," *Turner v. Safley,* 482

U.S. 78, 89 (1987), the question becomes whether the regulation "is reasonably related to

legitimate penological interests," *Shakur,* 391 F.3d, at 113 (quoting *Turner v. Safley,* 482 U.S. 78,

89 (1987)). The issue of reasonableness, however, will ordinarily be a matter for the defendant to

raise on summary judgment or at trial,[4] unless the regulation is "so obviously related to

legitimate penological concerns that challenges to them may be dismissed . . . based simply on

an (irrefutable) 'common sense determination.'" *Shakur,* 391 F.3d at 115 n.4 (quoting *Senkowski,*

54 F.3d at 1059 (Calabresi, *J.,* dissenting)).

At the pleading stage, the question is simply whether the plaintiff has alleged facts

showing that "defendants significantly interfered with [plaintiff's right to exercise his] religious

beliefs." *McEachin v. McGuinnis,* 357 F.3d 197, 2003 (2d Cir. 2004); *Jones v. Goord*, 435 F.

Supp. 2d 221, 256-57 (S.D.N.Y. 2006) (noting that in this Circuit, "a claim of 'significant[ ]

interfere[nce] with . . . religious beliefs' is sufficient to state a constitutional claim."[5] (quoting

*McEachin,* 357 F.3d at 203) (alteration in original)).

---

[4] But it will be the prisoner-plaintiff's burden to prove "that [a] disputed regulation is unreasonable." *Shakur*, 391 F.3d at 113 (quoting *Senkowski,* 54 F.3d at1054).

[5] A number of district courts, citing *Salahuddin v. Goord,* 467 F.3d 263, 274–75 (2d Cir. 2006), have held that, to state a First Amendment claim, a prisoner must show that the disputed conduct "substantially burdens" his religious exercise. *See, e.g., JCG v. Ercole,* No. 11-CV-6844, 2014 WL 1630815, at *21 (S.D.N.Y. Apr. 24, 2014) (citing *Leach v. New York City,* No. 12-CV-3809, 2013 WL 3984996, at *5 (S.D.N.Y. Aug. 2, 2013)), *report and recommendation adopted,* 2014 WL 2769120 (S.D.N.Y. June 18, 2014); *Amaker v. Goord,* No. 06-CV-490A, 2010 WL 2595286, at *11 n.3 (W.D.N.Y. Mar. 25, 2010), *report and recommendation adopted,* 2010 WL 2572972 (W.D.N.Y. June 23, 2010). The court in *Salahuddin,* however, was addressing the standard under RLUIPA, and explicitly declined to determine whether the same inquiry applies to First Amendment claims. *See* 467 F.3d at 274–75 n.5 ("Resolution of this appeal does not require us to address [the] argument that a prisoner's First Amendment free-exercise claim is not

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a).[6] Under RLUIPA, the government may not "substantial[ly] burden" a prisoner's religious exercise unless the burden furthers a compelling governmental interest by the least restrictive means. *Jova v. Smith*, 582 F.3d 410, 415 (2d Cir. 2009). RLUIPA provides prisoners with "greater protection" to exercise their religious beliefs than the First Amendment. *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015).

Plaintiff's general assertions that correction officials disfavor Islam and favor Judaism, and that they have denied him and others the opportunity to observe Islamic holidays are insufficient to state plausible claims for relief under RLUIPA or the First Amendment. Plaintiff's allegations do not suggest that correction officials substantially burdened or interfered with his religious practices.

The Court grants Plaintiff leave to replead to state claims under RLUIPA and the First Amendment. Should he choose to amend his complaint, he must allege any facts showing that individuals named as defendants substantially burdened or interfered with his religious practices.

---

governed by the 'substantial burden' threshold requirement."); *see also Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (noting that district court "improperly imported a strand of reasoning from cases involving prisoners' First Amendment Rights" into its analysis under RLUIPA."); *Jones*, 435 F. Supp. 2d at 256-57 (noting that "[t]his Circuit . . has neither adopted nor rejected that standard" (citing *McEachin,* 357 F.3d at 203)).

[6] RLUIPA does not provide for monetary damages against state officials sued in their official capacity, *Sossamon v. Texas*, 563 U.S. 277 (2011), or in their individual capacities, *Washington v. Gonyea*, 731 F.3d 143 (2d Cir. 2013) (per curiam).

Plaintiff's RLUIPA and free-exercise claims must be based on more than an isolated denial of a religious observance and general assertions of correction official's hostility to his religion.

### iii.    Adjudication of Grievances

Plaintiff further asserts that correction officials summarily denied his grievances concerning the unconstitutional conditions of confinement, denial or interference with his religious practices, and other violations. Courts in the Second Circuit have held that "a prisoner has no constitutional right to a prison grievance procedure or to have his grievances investigated." *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 434 (S.D.N.Y. 2012) (collecting cases); *see also, e.g.* , *Ross. v. Westchester Cnty. Jail*, No. 10-CV-3937 (DLC), 2012 WL 86467, at *8 n.9 (S.D.N.Y. Jan. 11, 2012) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). "[I]nmate grievance programs created by state law are not required by the Constitution, and consequently[,] allegations that prison officials violated those procedures [do] not give rise to a cognizable § 1983 claim." *Harris v. Westchester Cnty. Dep't of Corr.*, No. 06-CV-2011 (RJS), 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3, 2008) (internal quotation marks and citations omitted, second alteration in original). Thus, inmates "do not have a due process right to a thorough investigation of grievances." *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 380 (S.D.N.Y. 2011) (internal quotation marks and citation omitted); *see also Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("The correction officers' failure to properly address [the plaintiff's] grievances by conducting a thorough investigation to [the plaintiff's] satisfaction does not create a cause of action for denial of due process because [the plaintiff] was not deprived of a protected liberty interest.").

Plaintiff's assertion concerning the denial of his grievances fails to state a claim under § 1983. As correction officials do not have a constitutional obligation to provide Plaintiff with grievance procedures or to perform a thorough investigation of his assertions, his claims

concerning the grievance process are dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

    4.    Access to Counsel

Plaintiff also alleges that his inability to have private and confidential phone calls with his attorney impinges on his ability to prepare for his criminal trial and constitutes denial of counsel. "[T]he right to counsel and the right of access to the courts are interrelated, since the provision of counsel can be a means of accessing the courts." *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001). In cases involving a pretrial detainee's right to criminal defense counsel, both the due process right of access to the courts and the Sixth Amendment right to counsel are implicated. *Id.* at 187 (considering whether prison restrictions on pretrial detainees' visits with their attorneys violated the detainees' rights to counsel and of access to the courts). The ability for an attorney to communicate privately and freely with his client is key to the constitutional guarantees of the right to effective assistance of counsel. *See United States v. Rosner*, 485 F.2d 1213, 1224 (2d Cir. 1973).

When a pretrial detainee contests his or her access to counsel, the court must consider whether the challenged prison conduct "unreasonably burden[s]" the detainee's "opportunity to consult with his attorney and to prepare his defense." *Benjamin*, 264 F.3d at 187 (citation and internal quotation marks omitted; *see also Grubbs v. O'Neill*, 744 Fed. Appx. 20, 22-23 (2d Cir. 2018) (discussing balancing test to determine if an institutional restriction burdens a pretrial detainee's Sixth Amendment right to counsel). A district court must balance the alleged burden posed by the institutional restriction and any proffered reasons for the restriction and consider the chilling effect the restriction may have on the right to counsel. *See Grubbs*, 744 Fed. App'x at 22-23.

Here, Plaintiff alleges that correction officials require him to call his attorney in the presence of the Chaplain or a social worker, thus destroying the confidentiality of his legal conversations. But this assertion alone may not suffice if Plaintiff has alternate means of communicating with his counsel. *See Fisher v. Dep't of Corr.*, No. 92-CV-6037 (LAP), 1995 WL 608379, at *7 (S.D.N.Y. Oct. 16, 1995) (dismissing, on summary judgment, prisoner's § 1983 claim regarding telephone access to counsel where prisoner had access by other means); *see also Henry v. Davis*, No. 10-CV-7575 (PAC)(JLC), 2011 WL 3295986, at *2 (S.D.N.Y. Aug. 1, 2011) ("Phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, and particularly with counsel."); *Pino v. Dalsheim*, 558 F. Supp. 673, 675 (S.D.N.Y. 1983) (restrictions on telephone calls permitted where a prisoner had other means to communicate with attorney).

The Court therefore grants Plaintiff leave to amend this claim. Should Plaintiff choose to file an amended complaint he may detail his claim that the lack of private phone calls at Rockland County Correctional Facility impinges on his right of access to his attorney. Plaintiff must plead facts showing that correction officials "unreasonably burdened" his opportunity to consult with his attorney and to prepare his defense. *Grubbs*, 744 Fed. App'x at 22-23; *Benjamin*, 264 F.3d at 187. He should also state whether he has alternate means –such as the mail– of communicating with his attorney

## C.      Challenge to Criminal Proceedings and Pretrial Detention

Finally, Plaintiff asserts several claims arising from his ongoing state-court criminal proceedings, including that the charges are based on "hearsay allegations" (ECF No. 1 at 20), he was appointed "horrible counsel" (*id* at 10), he has been denied relief based on violation of his right to speedy trial and his unconstitutional conditions of confinement, and he has generally

been deprived of his rights under the Fifth and Sixth Amendments to the Constitution. Plaintiff also requests release from custody.

In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court held that a federal court may not enjoin a pending state-court criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) (citing *Younger*, 401 U.S. 37); *see also Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013) ("*Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution."). A pending state prosecution ordinarily provides the accused "a fair and sufficient opportunity for vindication of federal constitutional rights." *Kugler v. Helfant,* 421 U.S. 117, 124 (1975); *see also Baker v. Supreme Court for New York*, No. 12-CV-4750 (BMC), 2012 WL 4739438, at *2 (E.D.N.Y Oct. 3, 2012).

Here, abstention under *Younger* is appropriate because the relief Plaintiff seeks would require the Court to review or intervene in his ongoing state-court criminal proceedings. New York State has an important state interest in enforcing its criminal laws, and Plaintiff fails to show that he does not have an adequate opportunity to raise his constitutional challenges within the state-court criminal case. As each of the requirements for *Younger* abstention is satisfied in this case — Plaintiff's state criminal proceeding is still pending, involves important state interests, and will afford him the opportunity to present his constitutional objections to the alleged violations — this Court must abstain from interfering in Plaintiff's ongoing criminal prosecution. *See Sprint*, 134 S. Ct. at 588.

As to Plaintiff's request to be "released from [the] hearsay allegations," (ECF No. 1 at 20), he may not challenge the basis for his pretrial detention in a § 1983 action; instead, he can only obtain such relief by bringing a petition for a writ of *habeas corpus*. *See Wilkinson v. Dotson*, 544 U.S. 74, 78-82 (2005) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973) (noting that writ of *habeas corpus* is sole remedy for prisoner seeking to challenge the fact or duration of his confinement)). But before a federal court may consider a *habeas corpus* petition challenging Plaintiff's pretrial confinement, he must first exhaust his available state-court remedies.[7] As Plaintiff does not allege any facts suggesting that he has presented his claims through the state's established review process, even if the Court were to construe his claims as a petition for *habeas corpus* relief, the petition would be denied. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991) ("[A] state prisoner's federal *habeas* petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims.").

## LEAVE TO AMEND

The Court dismisses Plaintiff's claims against Rockland County Correctional Facility, Rockland County Jail Medical Department, Rockland County Court, Spring Valley Court, Clarkstown Court, Rockland County Bar Association, Christina Cignak, Theresa Difalco, Rockland County Defenders Office, Stephanie Jordan, Mark Liquor, David Constanza, Christopher Waters, Keefe Commissary Network, and the John Does from the Clarkstown Police. The Court further dismisses Plaintiff's claims relating to access to courts, denial of his grievances, and arising out of his ongoing state-court criminal proceedings. Plaintiff is granted

---

[7]To satisfy the exhaustion requirement, a petitioner's grounds for *habeas corpus* relief must be presented to the highest state court through the state's established review process. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Daye v. Attorney General*, 696 F.2d 186, 190 (2d Cir. 1982).

leave to amend his complaint to detail the following: his conditions of confinement claims, with respect to the unsafe basketball court, inadequate prison-issued footwear, and inadequate medical care; violation of his religious rights under the Free Exercise Clause; and denial of confidential phone calls with his attorney.

First, Plaintiff must name as the defendant(s) in the caption[8] and in the statement of claim those individuals who were allegedly involved in the deprivation of his federal rights. If Plaintiff does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint.[9] The naming of John Doe defendants, however, does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" defendants and amending his complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires. Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

Further, in the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Plaintiff is also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

a)  give the names and titles of all relevant persons;

---

[8] The caption is located on the front page of the complaint. Each individual defendant must be named in the caption. Plaintiff may attach additional pages if there is not enough space to list all of the defendants in the caption. If Plaintiff needs to attach an additional page to list all defendants, he should write "see attached list" on the first page of the amended complaint. Any defendants named in the caption must also be discussed in Plaintiff's statement of claim.

[9] For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty August 31, 2018, at Sullivan Correctional Facility, during the 7-3 p.m. shift."

b) describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

d) give the location where each relevant event occurred;

e) describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

f) state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. The Court dismisses Plaintiff's claims against Rockland County Correctional Facility, Rockland County Jail Medical Department, Rockland County Court, Spring Valley Court, Clarkstown Court, Rockland County Bar Association, Christina Cignak, Theresa Difalco, Rockland County Defenders Office, Stephanie Jordan, Mark Liquor, David Constanza, Christopher Waters, Keefe Commissary Network, and the John Does from the Clarkstown Police. Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 18-CV-8290 (CM). An

Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Clerk of Court is also directed to docket this as a "written opinion" within the meaning of Section 205(a)(5) of the E-Government Act of 2002.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:　　April 15, 2019
　　　　　New York, New York

COLLEEN McMAHON
Chief United States District Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____

(Include case number if one has been assigned)

## AMENDED
## COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

## I.  LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.  PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name            Middle Initial            Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                          State                     Zip Code

## III.  PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee

☐  Civilly committed detainee

☐  Immigration detainee

☐  Convicted and sentenced prisoner

☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                    Zip Code

Defendant 2:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                    Zip Code

Defendant 3:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                    Zip Code

Defendant 4:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                    Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

_____

## VII.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

_____               _____
Dated                                                              Plaintiff's Signature

_____
First Name                              Middle Initial              Last Name

_____
Prison Address

_____
County, City                                           State                     Zip Code


Date on which I am delivering this complaint to prison authorities for mailing:  _____